UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAMON L. DUNCAN,

       Plaintiff,

  v.                               17-CV-573
                                         DECISION AND ORDER

ANDREW SAUL,
Commissioner of the Social Security
Administration,

       Defendant.

---

On June 26, 2017, the plaintiff, Damon L. Duncan, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On August 14, 2018, Duncan moved for judgment on the pleadings, Docket Item 18; on November 8, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 26; and on December 19, 2018, Duncan replied, Docket Item 29.

For the reasons stated below, this Court grants Duncan's motion and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I.   PROCEDURAL HISTORY

On June 25, 2015, Duncan applied for disability insurance benefits. Docket Item 6 and 75. He claimed that he had been disabled since February 6, 2015, due to

degenerative disc disease, a bulging cervical disc, a torn left rotator cuff, a right shoulder sprain, high blood pressure, diabetes, and high cholesterol. *Id.* at 75-76.

On October 30, 2015, Duncan received notice that his application was denied because he was not disabled under the Act. *Id.* at 89-98. He requested a hearing before an administrative law judge ("ALJ"), *id.* at 101-14, which was held on May 4, 2017, *id.* at 30. The ALJ then issued a decision on May 23, 2017, confirming the finding that Duncan was not disabled. *Id.* at 25. Duncan appealed the ALJ's decision, but his appeal was denied, and the decision then became final. *Id.* at 5-11.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Duncan's objection. Duncan was injured in a motor vehicle accident on February 6, 2015. Docket Item 6 at 462. Since that time, Duncan was examined by several different providers, but only two—Michael D. Calabrese, M.D., and Cheryle R. Hart, M.D.[1]—are most significant to this Court's review of Duncan's claims.

### A. Michael D. Calabrese, M.D.

The ALJ determined that Dr. Calabrese was one of Duncan's treating physicians. Docket Item 6 at 22. In his treatment notes associated with Duncan's examination on April 23, 2015, Dr. Calabrese opined that Duncan was "temporarily impaired as a direct result of the motor vehicle collision on 2/06/2015 due to the above stated impressions. Exertional abilities will be re-evaluated in 1 month to determine work capabilities." *Id.* at

---

[1] The record is silent as to the specialties of Dr. Calabrese and Dr. Hart.

2

467. Dr. Calabrese also opined that "[a]t this time, the patient is unable to return to gainful employment." *Id.*

For the next fifteen months, Duncan visited Dr. Calabrese about once a month. *See id.* at 351-467. Dr. Calabrese reiterated his statements about Duncan's inability to work at each of those monthly visits. *Id.* at 366, 374, 382, 390, 398, 406, 413-14, 421, 428, 435, 441-42, 448-49, 455, 461, 467. The last time that Dr. Calabrese found Duncan's impairments to be so severe that he was "unable to return to gainful employment" was at an examination on June 17, 2016. *Id.* at 366. That also was the last time that Dr. Calabrese concluded that Duncan was "temporarily totally impaired as a direct result of the motor vehicle collision on 02/06/2015." *Id.*

On July 18, 2016, after an examination, Dr. Calabrese opined that "[a]t this time, [Duncan] may perform sedentary type of work." *Id.* at 358. And at that time, Dr. Calabrese changed Duncan's status from "temporarily totally impaired" to "temporarily partially impaired to a marked degree as a result of the motor vehicle collision on 02/06/2015." *Id.*

### B. Cheryle R. Hart, M.D.

The ALJ determined that Dr. Hart was another of Duncan's treating physicians. *Id.* at 22. After the motor vehicle accident but before being treated by Dr. Calabrese, Duncan saw Dr. Hart twice at the same offices where he later saw Dr. Calabrese. *See id.* at 468-80. On February 18, 2015, Dr. Hart opined that Duncan was "unable to return to gainful employment" and that he was "temporarily totally impaired as a direct result of the motor vehicle collision on 02/06/2015." *Id.* at 480. Dr. Hart reiterated those findings after her examination on March 18, 2015. *Id.* at 474-75.

3

### III. THE ALJ'S DECISION

In denying Duncan's application, the ALJ evaluated Duncan's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled

and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Duncan had not engaged in "substantial gainful activity" since February 6, 2015, the alleged onset date. Docket Item 6 at 18. At step two, the ALJ found that Duncan had the following severe impairments: "disorders of the right shoulder; disorders of the neck and back; and insulin dependent diabetes mellitus." *Id.* At step three, the ALJ determined that Duncan did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P. Appendix 1." *Id.*

In assessing Duncan's RFC, the ALJ determined that Duncan can perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[2] except that "he can only

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

5

occasionally climb ramps and stairs (never ladders, ropes, or scaffolds) and can rarely (less than occasionally but not never) balance, kneel, crouch, stoop, or crawl." *Id.* at 19. Additionally, the ALJ determined that Duncan "requires use of a cane for ambulation." *Id.* Based on that RFC, the ALJ determined at step four that Duncan "is capable of performing past relevant work as a bus monitor." *Id.* at 23.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

6

**DISCUSSION**

Duncan argues that the ALJ "erred in failing to properly evaluate the favorable opinion of treating physician Dr. Calabrese." Docket Item 18-1 at 17-21. He also argues that the ALJ failed to properly consider lay testimony and that new evidence warrants remand. *Id.* at 21-26. Because this Court agrees with Duncan's first argument—not only as to Dr. Calabrese but as to Dr. Hart as well—the Court remands for appropriate consideration of the treating-physician opinions.

"Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Id.* "The opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

"Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Id.* "In doing so, it must 'explicitly consider' the following, nonexclusive '*Burgess* factors': '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* at 95-96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "At both steps, the ALJ must 'give good reasons in its notice

of determination or decision for the weight it gives the treating source's medical opinion.'" *Id*. at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

"An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight . . . is a procedural error." *Id*. "If 'the Commissioner has not otherwise provided good reasons for its weight assignment,' [courts] are unable to conclude that the error was harmless and consequently remand for the ALJ to 'comprehensively set forth its reasons.'" *Id*. (quoting *Halloran*, 362 F.3d at 33).

In this case, the ALJ addressed the opinions of Dr. Hart and the earlier opinions of Dr. Calabrese separately from Dr. Calabrese's July 2016 opinion. Docket Item 6 at 22. The ALJ gave

> little weight to the February through June 2016 statements of Dr. Calabrese and Cheryle Hart, MD, treating providers, that the claimant is totally impaired and is unable to work, as these opinions are on an issue reserved to the Commissioner and are generally inconsistent with the record as a whole for the reasons noted above (11F/16-130).

*Id*. On the other hand, the ALJ gave

> great weight to the July 2016 opinion of Dr. Michael Calabrese, a treating provider, that the claimant is temporarily partially impaired to a marked degree but is able to perform sedentary work, as this opinion is generally consistent with the record for the reasons noted above (11F/8).

*Id*. These largely conclusory statements "fail[ed] to 'explicitly' apply the *Burgess* factors when assigning weight" to Dr. Calabrese's and Dr. Hart's opinions. *See Estrella*, 925 F.3d at 96.

For example, the ALJ did not consider "the first *Burgess* factor—'the frequency, length, nature, and extent of [Dr. Calabrese's] treatment'—before weighing the value of" his opinions from 2015 through June 2016. *See id*. (quoting *Selian*, 708 F.3d at 418). Nowhere in the ALJ's decision, for example, is the fact that Dr. Calabrese saw Duncan

8

each month for about fifteen months.  Nor did the ALJ explicitly address the second *Burgess* factor—"the amount of medical evidence supporting the opinion."  *See id.* at 95 (quoting *Selian*, 708 F.3d at 418).  Instead, the ALJ focused only on her conclusory observation that Dr. Calabrese's and Dr. Hart's opinions were "generally inconsistent with the record as a whole."  Docket Item 6 at 22.  But a more thorough consideration of what evidence supported the treating physicians' conclusions—instead of focusing only on the evidence that did not support their conclusions—may have led to greater weight being assigned to these opinions.

Furthermore, the ALJ's observation that Dr. Hart's and Dr. Calabrese's "opinions are on an issue reserved to the Commissioner," *id.*, is not a "good reason" for assigning them "little weight."  Of course, the Commissioner is "responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability," and therefore a "statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the agency] will determine that [the claimant is] disabled" within the meaning of the Act.  20 C.F.R. § 404.1527(d)(1).  In other words, a treating physician's opinion that a claimant is disabled within the meaning of the Act does not get controlling weight.  But that does not mean that a medical opinion—made after an examination—that an individual should not be working is necessarily entitled to "little weight."[3]

---

[3] Indeed, the ALJ determined that Dr. Calabrese's July 2016 opinion that Duncan could "perform sedentary work" was entitled to "great weight" without any discussion about why Dr. Calabrese suddenly had the authority to opine on Duncan's ability to engage in gainful activity—"an issue reserved to the Commissioner."  *See* Docket Item 6 at 22.

9

SSA regulations define medical opinions as "statements from acceptable medical sources that *reflect* judgments about the nature and severity of [a claimant's] impairment(s), including . . . physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Dr. Calabrese's and Dr. Hart's opinions that Duncan cannot work in light of his injuries *reflect* underlying judgments about the nature and severity of his injuries; indeed, there is little doubt that their statements could not have been made but for a judgment that Duncan's impairments were severe. So the medical opinions implicit in their statements must be considered and weighed in light of the *Burgess* factors. And if the medical opinions implicit in their statements were unclear, then the ALJ had "an affirmative duty to 'fill [the] clear gap[] in the administrative record' before rejecting" the treating physicians' opinions by contacting them for clarification. *Selian*, 708 F.3d at 420 (quoting *Burgess*, 537 F.3d at 129).

What is more, "a searching review of the record" fails to "assure" this Court "that the substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32). Although the ALJ's failure to apply the fourth *Burgess* factor—whether the physician is a specialist—may be harmless in light of the fact that neither Dr. Calabrese nor Dr. Hart appear to be specialists, this Court cannot say that the ALJ's failure to apply the other *Burgess* factors was likewise harmless. For example, the ALJ balanced the "little weight" given to most of Dr. Calabrese's opinions against the "great weight" he gave to a one-time treating examiner, Donna Miller, D.O., who opined that Duncan had only "mild limitations." Docket Item 6 at 21-22. But if the ALJ assigned more weight to Dr. Calabrese's opinion in light of the first *Burgess* factor, the ALJ may have formulated Duncan's RFC differently.

10

In light of the ALJ's failure to properly apply the *Burgess* factors to Duncan's treating source opinions, this Court remands this case to the Commissioner for reconsideration of Duncan's claim consistent with the procedural mandates of the SSA and Second Circuit precedent.[4]

**CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 26, is DENIED, and Duncan's motion for judgment on the pleadings, Docket Item 18, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: July 17, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[4] As noted above, Duncan also argues that the "Commissioner erred in failing to properly evaluate the testimony of Mr. Duncan's wife under SSR 06-03[p] and SSR 96-7p." Docket Item 18-1 at 24-26. "Because [Duncan's] case must return to the agency either way for the reasons already given, the Commissioner will have the opportunity on remand to obviate this dispute altogether by" reconsidering the testimony of Duncan's wife to the extent necessary. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019).

Moreover, Duncan asked this Court to remand his case pursuant to 42 U.S.C. § 405(g) so that the Commissioner can consider what Duncan believes is new and material evidence. Docket Item 18-1 at 21-24. This Court need not determine whether that new evidence alone entitles Duncan to a remand under the statute "[b]ecause this Court has determined that remand is [otherwise] necessary[.]" *Catoe v. Berryhill*, 2019 WL 483319, at *8 (W.D.N.Y. Feb. 7, 2019). Therefore, "the ALJ should consider this evidence in the first instance on remand." *Id.*